UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| In re<br><br>JING HUA,<br><br>                            **Debtor**<br>JAMES CHODOSH,<br><br>                            **Plaintiff**<br>v.<br><br>JING HUA,<br><br>                            **Defendant** | Chapter 7<br>Case No. 20-12416<br><br><br><br>Adversary Proceeding<br>No. 21-1018 |

**MEMORANDUM OF DECISION AND ORDER ON**
**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff James Chodosh has moved for summary judgment against defendant and debtor Jing Hua on both counts of his complaint. The complaint seeks a determination that two judgments he has obtained against her—one for malicious prosecution, abuse of process, and defamation in the amount of $688,188.12 ("the Middlesex Judgment"), and the other for contempt of court in the amount of $67,674.88 ("the BMC Judgment")—are excepted from discharge by 11 U.S.C. § 523(a)(6). He seeks summary judgment entirely on the basis of issue preclusion, arguing that the judgments themselves have preclusive effect in his favor as to each of the issues of fact and law in contest. Hua opposes the motion. For the reasons below, the Court will deny summary judgment as to both judgment debts.

**APPLICABLE LAW**

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991). Summary judgment should be granted "if the movant shows that

there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), made applicable to this proceeding by Fed. R. Civ. P. 7056; *see also Desmond v. Varrasso (In re Varrasso)*, 37 F.3d 760, 762-63 (1st Cir. 1994). Where, as here, the burden of proof at trial would fall on the party seeking summary judgment, that party must support its motion with evidence—in the form of affidavits, admissions, depositions, answers to interrogatories, and the like—as to each essential element of its cause of action. The evidence must be such as would permit the movant at trial to withstand a motion for directed verdict under Fed. R. Civ. P. 50(a). *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Provided it does so, the burden then shifts to the opposing party to adduce evidence that establishes a genuine issue of material fact as to at least one essential element of the moving party's case. "[S]ome alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment, the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Material facts are those that might affect the outcome of the suit under the governing law. *Id.* at 248. A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

Bankruptcy Code § 523(a)(6) excepts from discharge any debt for "willful and malicious injury by the debtor to another entity or to the property of another entity[.]" 11 U.S.C. § 523(a)(6). A simple parsing of this statutory language establishes that the plaintiff must show four things: (i) the debtor injured another entity or the property of another entity; (ii) the injury was willful; (iii) the injury was malicious; and (iv) the debt in question is for the willful and malicious injury. The creditor bears the burden of proving these requirements by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 287 (1991).

2

"Willful" in subsection (a)(6) requires a showing of intent to injure or at least of intent to do an act which the debtor is substantially certain will lead to the injury in question. *Kawaauhau v. Geiger*, 523 U.S. 57, 61-62, 118 S.Ct. 974, 977, 140 L.Ed.2d 90 (1998). This is because "willful" modifies "injury" and therefore requires a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury. *Id*. Negligently or even recklessly inflicted injuries are not excepted from the discharge. *Id*. at 64.

"Malicious" in subsection (a)(6) requires the injury to have been "wrongful," "without just cause or excuse," and "committed in conscious disregard of one's duties." *Printy v. Dean Witter Reynolds, Inc.*, 110 F.3d 853, 859 (1st Cir.1997). "Malice thus has both objective and subjective elements: the injury must have been objectively wrongful or lacking in just cause or excuse; and the debtor must have inflicted the injury in "conscious disregard" of [the debtor's] duties, meaning that [the debtor] has to have been aware that the act was wrongful or lacking in just cause or excuse." *Burke v. Neronha (In re Neronha)*, 344 B.R. 229, 231-32 (Bankr. D. Mass. 2006). It is not necessary that a debtor specifically intend to harm the creditor for an act to be malicious. *Printy,* 110 F.3d at 859 (specific intent to injure is not necessary to establish malice).

The doctrine of issue preclusion applies in discharge exception proceedings under 11 U.S.C. § 523(a).  See *Grogan v. Garner*, 498 U.S. 279, 284 n. 11 (1991); see also *Backlund v. Stanley-Snow (In re Stanley-Snow)*, 405 B.R. 11, 18 (BAP 1st Cir. 2009). The preclusive effect of a Massachusetts judgment—both judgments here are Massachusetts judgments—is determined by Massachusetts law. *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985) (stating that the full faith and credit

3

statute, 28 U.S.C. § 1738, "directs a federal court to refer to the preclusion law of the State in which the judgment was rendered"); *Stanley-Snow*, 405 B.R. at 18.

"Issue preclusion prevents relitigation of an issue determined in an earlier action where the same issue arises in a later action, based on a different claim, between the same parties or their privies." *Kobrin v. Bd. of Registration in Med.*, 444 Mass. 837, 843, 832 N.E.2d 628, 634 (2005). Under Massachusetts law, "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." *Fireside Motors, Inc. v. Nissan Motor Corp. in U.S.A.*, 395 Mass. 366, 372, 479 N.E.2d 1386 (1985), quoting Restatement (Second) of Judgments § 27 (1982). As to each issue of fact or law that a party would establish by issue preclusion, Massachusetts law requires a determination that: (i) there was a final judgment on the merits in the prior adjudication, *Tuper v. North Adams Ambulance Serv., Inc.*, 428 Mass. 132, 134, 697 N.E.2d 983, 985 (1998); (ii) the party against whom preclusion is asserted was a party (or in privity with a party) to the prior adjudication, *id.*; (iii) the issue in the prior adjudication was identical to the issue in the current adjudication, *id.*; (iv) the issue decided in the prior adjudication was essential to the earlier judgment, *id.*; (v) appellate review was available as to the issue, *Sena v. Commonwealth*, 417 Mass. 250, 260, 629 N.E.2d 986, 992 (1994); and (vi) the issue was actually adjudicated, *Fireside Motors, Inc. v. Nissan Motor Corp. in U.S.A.*, 395 Mass. at 372. "The fact finder is afforded wide discretion in deciding whether collateral estoppel should be applied in a particular case." *In re Brauer*, 452 Mass. 56, 67 (2008).

In determining whether an issue has been actually litigated, "[t]he guiding principle

4

. . . is whether the party against whom it is asserted had a fair and full opportunity to litigate the issue in the first action or [whether] other circumstances justify affording him an opportunity to relitigate the issue." *Treglia v. MacDonald*, 430 Mass. 237, 241, 717 N.E.2d 249, 253 (1999). A garden-variety default judgment, in which the defendant does not appear and judgment enters without the defendant's participation, does not satisfy the requirement of actual litigation. Id. at 242 ("generally in the case of a judgment entered by default, none of the issues is actually litigated or decided"). *Treglia* itself involved a defendant who had appeared only to challenge the issuance of an attachment but had not otherwise answered or participated; the default judgment that entered against him was deemed not to have been the result of actual litigation. *Id*. The Supreme Judicial Court nonetheless closed with the following caveat: "We caution that, even in the case of a judgment entered by default, there may be some circumstances in which an issue may be given preclusive effect in subsequent litigation between the same parties. We can, for example, envision circumstances in which a litigant may so utilize our court system in pretrial procedures, but nonetheless be defaulted for some reason, that the principle and rationale behind collateral estoppel would apply." *Id*. at 242-43. The court did not specify the limits of the general rule.

Chodosh cites the case of *In re Brauer*, 452 Mass. 56, 70 (2008) as bearing on the question of when and whether counsel malpractice should affect the determination of whether an issue was actually litigated, but *Brauer* involved a different issue: the fairness determination necessary for any offensive use of issue preclusion. The present case does not involve an offensive use of issue preclusion, and *Brauer* was not addressing the separate requirement of actual litigation.

5

**ANALYSIS**

**The Middlesex Judgment**

   1. **Abuse of Process and Malicious Prosecution Counts**

The Middlesex Judgment entered on a three-count counterclaim by Chodosh and awarded damages on each of the three counts: for malicious prosecution, for abuse of process, and for defamation. The damages for malicious prosecution and abuse of process were co-extensive, meaning that, for the two counts, the court ordered a single recovery consisting of damages for legal fees and expenses and emotional distress. In its ruling on these damages, the court stated, "damages for malicious prosecution and abuse of process are essentially the same." A finder of fact could, on this adjudicatory record, find that this single award rested on two separate and independent bases: the malicious prosecution count and the abuse of process count. It would follow that the findings and rulings on neither count were essential to the judgment; each count made the other unnecessary or superfluous. If either failed on appeal but the other did not, the judgment would survive. I therefore conclude that, on the record in evidence, read in the light most favorable to the non-moving party, a finder of fact could reasonably determine that the findings and rulings on these counts were not essential or necessary to the judgment. Accordingly, there exists a genuine issue of material fact as to whether they may have preclusive effect here.

   2. **Defamation Count**

The Middlesex Judgment included an award of $50,000 for emotional distress damages entered on the count for defamation. In quantifying these damages, the court stated: "In order to prevail on a defamation claim, the plaintiff must establish that (1) the defendant made a false statement or statements of and concerning the plaintiff to a third

6

party; (2) the statement or statements could damage the defendant's reputation within the community; (3) the defendant was negligent in making the statement or statements; and (4) the statement caused economic harm or is actionable without proof of economic harm." In its ruling earlier on liability, made on a motion for summary judgment, the court articulated a similar if slightly different standard: "To succeed on a claim for defamation, the plaintiff must prove "that the defendant was at fault for the publication of a false and defamatory statement regarding the plaintiff, capable of damaging the plaintiff's reputation in the community, which either caused economic loss or is actionable without proof of economic loss." Neither of these standards includes a requirement that the injury be willful or that it be malicious.

Willful injury requires intent to injure or substantial certainty that one's intended action will result in injury. Neither willful injury nor substantial certainty of injury is required by either defamation standard. Rather, it appears that mere negligence suffices to establish defamation. It does not suffice for willful injury under § 523(a)(6).

Also, under neither of these standards is there a requirement of the subjective component that makes injury malicious for purposes of § 523(a)(6): conscious disregard of duty or, in other words, awareness that the act was wrongful or lacking in just cause or excuse. The rulings on defamation therefore do not suffice to establish the required maliciousness of the defamation injury.

For these reasons, I conclude that, on the present record, a finder of fact could determine that the rulings in the prior action on the defamation count are not identical to those required here for willful and malicious injury, and therefore that the prior judgment does not establish these elements as to the damages for defamation.

### 3. All Three Counts: Lack of Actual Litigation

Hua argues that the Middlesex Judgment in its entirety should have no preclusive effect because there is a genuine issue of material fact as to whether it satisfies the requirement of having been actually litigated. The Court agrees that on the evidence adduced, construed in the light most favorable to the nonmoving party, a trier of fact could find that the Middlesex action had not been actually litigated. On that evidence, a court could find that crucial factual determinations were made on the basis of "admissions" that were not in fact admissions on the part of Hua but that were taken as admissions because of negligent or otherwise inappropriate conduct of her attorney. The attorney had allowed an answer deadline to pass, suffered default to enter, moved to remove the default and filed an answer that he did not consult Hua in preparing, and then, as a condition of removal of the default, suffered the striking of the answers he had prepared to many of the allegations in the complaint, resulting in their being deemed admitted. All of this occurred without Hua's knowledge or participation.

On these facts, a trier of fact could determine that crucial issues of fact were determined by means other than actual litigation. Many crucial factual determinations were made on the basis of matters deemed admitted because the actual answers were stricken. Facts were thus established by default. However fair this may have been, it did not amount to a full opportunity to litigate the facts. It might be argued in response that the Debtor had a full opportunity and squandered it, but the same might be said of most ordinary default judgments, where a defendant simply elects not to appear. In Massachusetts law, where default judgment arises from a defendant's failure to appear, resulting in a deemed admission of the alleged facts, the resulting judgment is deemed not to arise from actual litigation. I reach this conclusion without relying on the alleged responsibility of counsel for

8

the admissions below.  I believe counsel's conduct is relevant and constitutes additional cause to conclude that Hua did not have a full and fair opportunity to litigate the facts.  But even without consideration of the role of counsel, a finder of fact could determine that the facts had not been actually litigated.

**The BMC Judgment**

The BMC Judgment entered on a complaint for contempt, specifically for violation of an agreed order.  The BMC made a determination that Hua was in contempt of the agreed order and awarded damages for that contempt but, in its memorandum of decision, did not indicate what the law required Chodosh to prove in order to obtain the contempt judgment he sought.  Nor does Chodosh now, in support of his motion for summary judgment, identify the requirements in Massachusetts of a judgment of contempt, the elements necessary to support the requested judgment, or contend that those requirements include that the injury that resulted from the contempt have been willful and malicious within the meaning of § 523(a)(6). Rather, what Chodosh now argues is only that the BMC judgment is based on conduct that was willful and malicious, not that the BMC judgment is based on determinations of willfulness and malice or that either was necessary to that judgment.  The court's memorandum of decision is based on a simple finding that Hua had violated the agreed order.  On the evidence before me, the contempt judgment did not itself require anything more than a determination that the agreed order had been violated. It required no determination that Hua had, by her contemptuous conduct, intended to injure or have been aware that her conduct was wrongful.

Chodosh relies also on findings made by the BMC at an earlier stage in that proceeding, in adjudicating a special motion to dismiss the contempt complaint as an alleged violation of Mass. Gen. Laws ch. 231, § 59H, Massachusetts' so-called Anti-SLAPP

9

(Strategic Litigation Against Public Participation) Statute. Specifically, the court found: "Dr. Chodosh has clearly demonstrated . . . that Dr. Hua's petitioning activities were devoid of any reasonable factual support or any arguable basis in law and that the petitioning activities caused actual injury to Dr. Chodosh." Chodosh does not contend that this finding was essential to the BMC's denial of the special motion to dismiss. On the record before me, a finder of fact could conclude that it was not essential. Before it made this finding, the court had already ruled that "a Contempt action that is based upon a violation of a court order is not a is not an [sic] effort to chill protected petitioning activity," and this ruling was a sufficient basis to deny the motion to dismiss. The court went on to make the cited findings as an alternate basis for the same disposition; the findings were therefore not necessary to the denial of the motion. But even if they were necessary to the disposition of the special motion to dismiss (and that was in turn necessary to the final judgment in the contempt action), the cited findings would not establish either the willfulness of the injury or the subjective element of malice, as these are required by § 523(a)(6). At most the finding would support a determination that Hua's injurious petitioning conduct had been wrongful ("devoid of any reasonable factual support or any arguable basis in law"), not that she was conscious of this wrongfulness or that she intended the injury that resulted. As to these issues there is no identity between the two actions.

    I conclude that, with respect to the BMC Judgment, too, Chodosh has failed to establish that there are no genuine issues of material fact.

**ORDER**

For the reasons set forth above, the Motion of Plaintiff James Chodosh for Summary Judgment is hereby denied.

Date: April 8, 2022

_____
Frank J. Bailey
United States Bankruptcy Judge